# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

All-City Towing LLC, *et al¹*                                     Case No.: 26-20523-rmb

                Debtors.                                     Chapter 11

## MOTION TO ASSUME TWO CONTRACTS WITH THE CITY OF MILWAUKEE FOR TOWING ILLEGALLY PARKED VEHICLES AND POLICE INITIATED TOWS

        All-City Towing, LLC (the "Debtor"), hereby moves, pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006, to assume two contracts between the Debtor and the City of Milwaukee ("Milwaukee"). In support of this motion, the Debtor states as follows:

### Jurisdiction

        1.      The Debtor, along with affiliated entities listed in footnote 1 below, filed their voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 1, 2026 (the "Petition Date"). An order for relief was entered that same day.

        2.      The Debtor continues to manage its business and affairs pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

        3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1344(a) and 157(a), and the order of reference filed in this district entered pursuant to § 157(a).

---

¹ Jointly administered with Bret's Towing LLC, (Case No. 26-20524-rmb), ACT RE LLC, (Case No. 26-20525-rmb), Bret's RE LLC (Case No. 26-20526-rmb), OMS Properties LLC (Case No. 26-20527-rmb), 5408 S 13th LLC (Case No. 26-20528-rmb), 5414 S 13th LLC (26-20529-rmb), Daddy Jeff LLC (Case No. 26-20530-rmb), Mactire Services LLC (Case No. 26-20531-rmb), and Jeffrey Piller and Candice Brecht (Case No. 26-20532-rmb). This document relates only to All-City Towing, LLC (Case No. 26-20523-rmb).

4.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). It concerns the administration of the Debtor's estate.

## Background Facts

5.      The Debtor provides 24/7 towing services.  Milwaukee requires use of towing services for removal of illegally parked vehicles and for police initiated tows.

6.      On December 2, 2021, Milwaukee issued two Request for Proposals requesting proposals for an illegally parked vehicle contract and for a police initiated towing contract.  The Debtor submitted proposals to Milwaukee.

7.      Milwaukee accepted the Debtor's proposals, and on May 1, 2022, the Debtor entered into contract no. C661220036, titled Agreement for Illegally Parked Vehicles Between the City of Milwaukee and All City Towing LLC, and contract no. C661220037, titled Agreement for Police Initiated Tows Between the City of Milwaukee and All City Towing LLC, with Milwaukee (the "Contracts").  Copies of the Contracts are attached as Exhibit A & Exhibit B.

8.      The Contracts are for a one-year terms and may be renewed for an additional year if Milwaukee provides written notice to the Debtor confirming renewal at least ninety (90) days prior to the end of the current term.  The Contracts may be renewed seven times in total.  If Milwaukee does not provide the Debtor with notice of renewal, the Contracts will lapse.

9.      The initial term of the Contracts began on May 1, 2022.  Milwaukee renewed the Contracts in May 2023, 2024, and 2025.  On January 21, 2026, Milwaukee provided written confirmation of its intention to extend the Contracts for another year.  A copy of the confirmation, extending the Contracts through April 30, 2027, is attached as Exhibit C.

10.      The Debtor would like to assume the Contracts and hopes to continue renewing the Contracts for one-year terms through April 2030.

2

11.     The Contracts provide a substantial amount of business for the Debtor. Milwaukee's decision to renew the Contracts is evidence that the Debtor has consistently fulfilled its end of the bargain under the Contracts.

12.     Assumption of the Contracts will be financially beneficial for the Debtor, and thus beneficial for the Debtor's creditors.  If the Contracts were to lapse, both the Debtor and the Debtor's creditors would be worse off.

## Applicable Law

13.     Pursuant to 11 U.S.C § 365(a), "[a] trustee or debtor-in-possession may assume any executory contract 'subject to the court's approval.'" *In re UAL Corp.*, 635 F.3d 312, 319 (7th Cir. 2011), as amended on denial of reh'g (Apr. 13, 2010).

14.     "Although the Bankruptcy Code does not provide a standard for analyzing a decision to assume or reject a contract or lease, courts apply a deferential 'business judgment' test." *In re IYS Ventures, LLC*, 659 B.R. 308, 321 (Bankr. N.D. Ill. 2024).

15.     A bankruptcy court "reviews the debtor's business judgment with respect to the proposed assumption to determine if it would be beneficial or burdensome to assume the executory contract by evaluating whether assumption would serve the reorganization or whether it would take away funds available to other creditors." *In re UAL Corp.* at 319.

## The Debtor's Business Judgment Supports Assumption of the Contracts

16.     Assumption of the Contracts will be beneficial for the Debtor and, as a result, beneficial for the Debtor's creditors.  The Contracts provide substantial business for the Debtor and generate a sizeable portion of the Debtor's income.  Assumption will enable the Debtor to continue generating income under the Contracts, ultimately increasing the pool of funds available to pay the Debtor's creditors.

3

**Conclusion**

Wherefore, the Debtor requests that the Court enter an Order authorizing the Debtor to assume the Contracts with Milwaukee.

Dated: March 6, 2026.

/s/ Tyler M. Jones
Evan P. Schmit
Tyler M. Jones
Kerkman & Dunn

Proposed Attorneys for the Debtor

P.O. Address:

839 N. Jefferson St., Suite 400
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: tjones@kerkmandunn.com

4

# EXHIBIT A

**CONTRACT NO. C661220036**

## AGREEMENT FOR ILLEGALLY PARKED VEHICLES
## BETWEEN
## THE CITY OF MILWAUKEE
## AND
## ALL CITY TOWING LLC

**THIS AGREEMENT** is made and entered into this _____1_____ day of __*May*__ , 2022, by and between the City of Milwaukee, a municipal corporation organized under the laws of the State of Wisconsin acting through its _____*OPW*_____ (the "City"), and All City Towing, a corporation organized under the laws of the State of Wisconsin (the "Contractor").

**WHEREAS**, the City issued a Request for Proposals (the "RFP") on December 2, 2021, requesting proposals for an illegally parked vehicle contract.

**WHEREAS**, by submitting a proposal, Contractor agrees to supply towing services for illegally parked vehicles.

**WHEREAS**, the Contractor represents itself as being capable, experienced, and qualified to undertake and perform those certain services and other terms as set forth in the RFP and this Agreement as an independent contractor and not as an employee of the City;

**NOW, THEREFORE**, in consideration of the mutual promises contained in this Agreement and other good and valuable consideration, including the right to be scored and remain in the RFP process, the City and the Contractor promise and agree as follows:

### ARTICLE I
### Retention of Services

1.1     The City hereby agrees to engage the Contractor and the Contractor hereby agrees to personally perform, as an independent contractor the services set forth in the Agreement, all in accordance with the terms and conditions herein. The Agreement is

comprised of the following documents, which shall be collectively referred to as the "Agreement":

1. This contract no. C661220036

2. Exhibit I: Fee Schedule

3. Exhibit II: The RFP

4. Exhibit III: The Contractor's Response to the RFP

    1.2    For purposes of contract interpretation, in case of any ambiguity, any conflicting terms shall be governed by the document which is listed as the higher priority in the above list of documents, which are listed from highest priority to lowest priority.

## ARTICLE II

## Term of Agreement and Early Termination

    2.1    Term of Agreement. The initial term of this Agreement is one (1) year. After the initial term, the Agreement shall renew for one (1) year terms beginning at the termination of the initial or prior term only if the City provides written notice to the Contractor at least ninety (90) days prior to the end of the initial or then-current term. Failure by the City to send notice of a renewal at least ninety (90) days prior to the end of the initial or then-current term shall act as notice of the City's intent to not renew the Agreement for an additional term. This Agreement shall not renew beyond a seventh (7th) renewal unless the parties agree to a renewal in writing.

    2.2    Changes. The City may authorize changes to the Agreement. Such changes, including but not limited to any increase or decrease in the contracted scope of services and/or completion date which are mutually agreed to by the City and Contractor shall be incorporated in written amendments to the Agreement. No changes to this Agreement shall be valid unless incorporated as a written, mutually agreed amendment thereto.

    2.3    Termination for Cause. If, through any cause, the Contractor shall fail to fulfill in a timely and proper manner its obligations under this Agreement, or if the Contractor shall violate any of the covenants, agreements, or stipulations of this Agreement, the City shall thereupon have the right to terminate this Agreement by giving written notice to the Contractor of such termination and specifying the effective date, at least ten (10) days before the effective date of such termination. In such event, all finished or unfinished documents, data, studies, surveys, drawings, maps, models, photographs, reports or other materials related to the services performed by the Contractor under this Agreement shall, at

2

the option of the City, become the property of the City. Notwithstanding the foregoing, the Contractor shall not be relieved of liability to the City for damages sustained by the City by virtue of any breach of this Agreement by the Contractor and any obligations under Articles VI, X, XI, and XII shall survive termination.

 2.4 Termination for Convenience. The City may terminate this Agreement at any time for any reason by giving at least ten (10) days' notice in writing to the Contractor. If the Contractor is terminated by the City as provided herein, the Contractor will be paid for services actually and satisfactorily performed, less payments for such services as were previously made. If this Agreement is terminated due to the fault of the Contractor, Section 2.3 hereof, relative to termination, shall apply. Any obligations under Articles VI, X, XI, and XII shall survive termination.

### ARTICLE III

### Obligations of Contractor

 3.1 Scope. The Contractor is required to perform, do and carryout in a satisfactory, timely, and professional manner the services set forth in the Agreement. The Contractor is required to furnish all services and labor necessary as directed in the Agreement including without limitation, materials, equipment, supplies, and incidentals. Contractor's products and services shall conform to the requirements of the Americans with Disabilities Act.

 3.2 Errors or Omissions. The Contractor shall be responsible and liable for the accuracy of the services performed under this Agreement, and shall promptly make necessary revision or corrections to its services resulting from its acts, errors or omissions.

 3.3 Standard of Performance. Contractor agrees that the performance of the services, pursuant to this Agreement, shall be performed in a manner consistent with the degree of care and skill ordinarily exercised by members of the same profession currently operating under similar circumstances providing like services. Contractor agrees to abide by all applicable federal, state and local laws, regulations, and ordinances, and all provisions of this Agreement, including, but not limited to, the Americans With Disabilities Act.

### ARTICLE IV

### Compensation and Terms of Payment

3

4.1    Terms of Payment. Upon receipt of a properly submitted and approved invoice, Contractor shall be compensated for services and products actually provided at the rates and prices set forth in Exhibit I; however, no payments or disbursements under the Agreement shall be made until satisfactory evidence that compliance with insurance requirements described in Exhibit II has been provided.


4.2    Not to Exceed. All other costs, fees, charges and expenses (including but not limited to travel and administrative costs and fees) not set for in Exhibit I are excluded.

[FEE STRUCTURE – Exhibit I]


4.3    Invoicing and Payments for Fees. Payments to the Contractor for fees pursuant to section 4.2 of this Agreement will submitted to City by Contractor via itemized invoices no more than monthly. Invoices shall be reviewed and approved by the Commissioner of Public Works or his designee.


4.4    Compensation for services required under this Agreement shall be contingent upon each activity and product being reviewed for approval by the City for payment. In the event of a dispute as to the services performed or the compensation to be paid, the good faith decision of the Commissioner of Public Works or his designee shall prevail.


4.5    Prompt Payment Policy. The Contractor shall submit an invoice and other documentation required pursuant to this Agreement (collectively referred to as the "Invoice") to the City on no more frequent than a monthly basis for any fees accrued but not yet invoiced to the City. Pursuant to Common Council File No. 101137, if the City does not make payment within 45 days after receipt of the Invoice, the City shall pay simple interest beginning with the 31st calendar day after submission of the Invoice at the rate of one percent per month. No attorney's fees, expenses, or other collection costs may be billed to the City unless otherwise agreed in writing. No interest shall be applied to any outstanding amounts where the Contractor has been sent notice that the amount owed to the Contractor is subject to a good faith dispute within 45 days of the receipt of the Invoice provided the notice was sent by first-class mail, personally delivered, or otherwise sent in accordance with any notice provisions in this Agreement. In the event that the 45th day after receipt of the Invoice is a Saturday, Sunday or national holiday, such payment may be made on the following business day without interest being owed to the Contractor. The City's failure to pay in a timely fashion does not relieve the Contractor from its obligation to perform the services it has been retained for. Consistent with Wis. Stat. § 66.0135(3), the Contractor shall pay any of its subcontractors for satisfactory work within seven (7) days of the Contractor's receipt of payment from the City or seven (7) days from receipt of an invoice from the subcontractor, whichever is later. If the Contractor fails to make timely payment to a subcontractor, the Contractor shall pay interest at the rate of 12 percent per year,

4

compounded monthly, beginning with the 8th calendar day after the Contractor's receipt of payment from the City or receipt of an invoice from the subcontractor, whichever is later.

4.6    Additional Fringe or Employee Benefits.    The Contractor shall be an independent contractor, and shall not receive nor be eligible for any fringe benefits or any other benefits to which City employees are entitled to or are receiving.

4.7    Taxes, Social Security, Insurance, and Government Reporting.    Personal income tax payments, social security contributions, insurance, and all other governmental reporting and contributions required as a consequence of the Contractor receiving any payment under this Agreement shall be the sole responsibility of the Contractor.

4.8    Withholding of Salaries.    If, in the performance of this Agreement, there is an underpayment of salaries by the Contractor or by any subcontractor thereunder, the City shall withhold from the Contractor out of any payments due to it an amount sufficient to pay employees underpaid the difference between the salaries required hereby to be paid and the salaries actually paid such employees for the total number of hours worked.  The amounts withheld shall be disbursed by the City for and on account of the Contractor or subcontractor, if any, to the respective employees to whom they are due.

4.9    Payment Monitoring Requirements.  Contractor is required to participate in training on the City's contract compliance software.  Contractor must complete the training no later than 30 days after the date of this Agreement.   Throughout the term of this Agreement, Contractor shall regularly provide timely payment information in the City's contract compliance software. City shall not be held liable or be required to pay any interest pursuant to Section 5.5 hereof for any late payments that result in full or in part from Contractor's failure to provide timely payment information to the City. Contractor shall contact the Office of Equity and Inclusion (OEI) at 414-286-5553 if it has questions or concerns regarding the training process.

### ARTICLE V

### Personnel, Qualifications, Subcontracting

5.1    Required Personnel.    The Contractor represents that it has or will secure at its own expense all personnel required to perform the services set forth in the Agreement.  These personnel shall not be employees of or have any contractual relationship to the City.

5

5.2     Fully Qualified.  The Contractor represents that all personnel engaged in the performance of the services set forth in the Agreement shall be fully qualified and shall be authorized or permitted under state and local law to perform the services.


5.3     Subcontracting.  None of the services to be performed under the Agreement shall be subcontracted without the prior written approval of the City.  If any of the services are subcontracted, the performance of such services shall be specified by written contract and shall be subject to each provision of this Agreement.  The Contractor shall be as fully responsible to the City for the acts and omissions of its subcontractors and of persons either directly or indirectly employed by its subcontractor, as it is for acts and omissions of persons directly employed by it.


## ARTICLE VI

### Indemnification and Defense of Suits


The Contractor shall indemnify the City and its officers, agents and employees for all losses, damages, costs, expenses, judgments, accrued interest, liabilities, or decrees arising out of any claim, action in a court, or proceeding before an administrative agency that is brought against the City or any of its subcontractors, officers, agents, or employees for the acts or omissions of the Contractor or any of its subcontractors, officers, agents, or employees in whole or in part in the performance of the covenants, acts, matters or things covered by this Agreement, or for injury or damage caused by the alleged acts or omissions of the Contractor, its officers, agents or employees. The City will, at its sole option, decide whether to tender the defense of any claim, action in court, or proceeding before an administrative agency in which the Contractor has a duty to indemnify to the Contractor or the Contractor's insurer and upon such tender it shall be the duty of the Contractor and the Contractor's insurer to defend such claim, action, or proceeding without cost or expense to the City or its officers, agents, or employees using counsel selected by the Contractor and approved by the City. The Contractor shall not settle any claim, action in any court, or proceeding before an administrative agency relating to the City unless the City consents to the settlement in writing.


## ARTICLE VII

### Insurance


7.1     Contractor's Insurance. The Contractor shall be solely responsible to meet the Contractor's insurance needs as required by the City, and as set forth in the Exhibit II, during the term of this Agreement or any extension thereof.  A Certificate of Insurance shall be provided to the City as evidence thereof naming the City as an additional insured as specified in Exhibit II, and providing for a 30 day notice to the City prior to termination or cancellation

6

of the policy. The City reserves the right to require review and approval of the actual policy of insurance before it executes this Agreement.

      7.2    Subcontractor's Insurance. The Contractor is fully liable to the City for the acts of its subcontractors, if any. Contractor must ensure that its subcontractors, if any, maintain the same minimum insurance limits as those the Contractor is obligated to maintain, as set forth in Exhibit II.

## ARTICLE VIII

### Conflicts of Interest

      8.1    The City - Governing Body. No officer, employee or agent of the City who exercises any functions or responsibilities in connection with the carrying out of any services or requirements to which this Agreement pertains, shall have any personal interest, direct or indirect, in this Agreement. No member of the Governing Body of the locality and no other public official of such locality who exercises any functions or responsibilities in the review or approval of the carrying out of this Agreement, shall have any personal interest, direct or indirect, in this Agreement.

      8.2    Contractor. The Contractor covenants that it presently has no interest and shall not acquire any interest, direct or indirect, which would conflict in any manner or degree with the performance of its services hereunder. The Contractor further covenants that in the performance of this Agreement no person having any conflicting interest shall be employed. An interest on the part of the Contractor or its employee must be disclosed to the City.

## ARTICLE IX

### Non-Discrimination and Equal Employment

      9.1    It is the City's policy not to discriminate against any employee or applicant for employment because of sex, race, religion, color, national origin or ancestry, age, disability, lawful source of income, marital status or sexual orientation, gender identity or expression, victimhood of domestic abuse or sexual assault, past or present membership in the military service, HIV status, domestic partnership, genetic identity, homelessness, or familial status, or an individual's affiliation or perceived affiliation with any of these categories ("Protected Classes"). Contractors and subcontractors employing any resident of the City of Milwaukee may not discriminate against any member of the Protected Classes, and such contractors must insert this clause into any subcontracts of subcontractors employing any resident of the City of Milwaukee.

9.2    No person in the United States shall, on the ground of sex, race, religion, color, national origin or religion, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity made possible by or resulting from this Agreement. The Contractor will cause the foregoing provisions to be inserted in all subcontracts, if any, for any work covered by this Agreement so that such provisions will be binding upon each subcontractor, provided that the foregoing provisions shall not apply to contracts or subcontracts for standard commercial supplies or raw materials.

9.3    The Contractor agrees that they will comply with all applicable requirements of the Americans with Disability Act of 1990, 42 U.S.C. 12101, et seq.

**ARTICLE X**

**Addresses and Notices**

Unless otherwise provided in the Agreement, any notice, communication, request, reply or advice (herein severally and collectively, for convenience, called "notice"), herein provided or permitted to be given, made or accepted by one party to the other must be in writing and may be given or be served by depositing the same in the United States mail, postage paid and certified and addressed to the party to be notified, with return receipt requested. Notice deposited in the mail in the manner described above shall be conclusively deemed to be effective, unless otherwise stated in this Agreement, from and after the expiration of three (3) days after it is deposited. Notice given in any other manner should be effective only if and when received by the party to be notified. For the purpose of notice, the address of the parties shall be as follows:

If to the City, to:          Department of Public Works

                             City of Milwaukee

                             Attention: Peter Knox

                             City of Milwaukee- Tow Lot

                             3811 W. Lincoln Ave.

                             Milwaukee, WI   53215


If to the Contractor, to:    All City Towing LLC

                             Attention: Jeff Piller

8

1213 W Mallory Ave

Milwaukee, WI 53221

**ARTICLE XI**

**Records, Audits, Confidentiality**

11.1    Access to Records.  The Contractor shall maintain books, records, documents and other evidence directly pertinent to performance under this Agreement in accordance with accepted applicable professional practices.   The City, or any of its duly authorized representatives, shall have access to such books, records, documents, papers, or any records of the Contractor which are directly pertinent to this Agreement, for the purpose of making audits, examinations, excerpts and transcriptions.

11.2    Establishment and Maintenance of Records / Public Records Law.  Both parties understand that City is bound by the Wisconsin Public Records Law, and as such, all of the terms of this Agreement are subject to and conditioned on the provisions of Wis. Stat. § 19.21, et seq.  Contractor acknowledges that it is obligated to assist City in retaining and producing records that are subject to the Wisconsin Public Records Law (which include, but are not limited to, those records of Contractor generated as a consequence of this Agreement), that the failure to do so shall constitute a material breach of this Agreement, and that Contractor must defend and hold City harmless from liability under that law.   Except as otherwise authorized, those records shall be maintained for a period of 7 years after receipt of final payment under this Agreement.

11.3    City's Right to Audit.  The Vendor shall make all reports, studies, analysis, memoranda, information, records, and related data and materials created as a result of this Agreement available to the City to allow the City to audit, examine, excerpt or transcribe the same and audit, examine, excerpt or transcribe all contracts, invoices, materials, payrolls, records of personnel, conditions of employment, and other data relating to all matters covered by this Agreement any time during normal business hours and as often as the City may, in its sole discretion, deem necessary. If federal or state grants or aids are involved in this Agreement, the Contractor shall make all reports, studies, analysis, memoranda, information, records, and related data and materials created as a result of this Agreement available to the appropriate federal or state agency or the Comptroller General to allow the appropriate federal or state agency or Comptroller General to audit, examine, excerpt or transcribe the same and audit, examine, excerpt or transcribe all contracts, invoices, materials, payrolls, records of personnel, conditions of employment, and other data relating to all matters covered by this Agreement any time during normal business hours and as often as the appropriate federal or state agency or Comptroller General may, in their sole discretion, deem necessary. The Vendor shall not charge any additional fees to the City, appropriate federal or state

9

agency, or Comptroller General by virtue of any additional work or costs associated with the performance of the Vendor's duties under this subsection.

11.4    Third Party Audit. The Vendor shall, on at least an annual basis, hire a third party auditing firm to perform a Statement on Standards for Attestation Engagements (SSAE) No. 18 audit, or equivalent audit, on internal and external Vendor procedures and systems that access or contain confidential data. The Vendor shall adhere to SOC 1 and SSAE 18 audit compliance criteria and data security procedures, or any successor report of a similar nature that is generally accepted in the industry as applicable, applicable to the Vendor. The Vendor shall provide the City with a copy of the audit results set forth its audit reports upon receipt of the same.

## ARTICLE XII

## Additional Provisions

12.1    Data confidential. Except as otherwise provided in this Agreement and subject to the City's obligations under the Wisconsin Public Records Law, the parties agree to keep all of the reports, information, data, etc. prepared, assembled, or shared by and among the parties to this Agreement confidential to the same extent as each party keeps its own data confidential and agrees not to release same except as required by law or court order without prior written consent of the other party.

12.2    Captions. The captions appearing at the beginning of each numbered section of this Agreement are inserted and included solely for convenience, but shall never be considered or given any effect in construing this Agreement or the duties, obligations or liabilities of the respective parties hereto, or in ascertaining intent if any questions of intent should arise.

12.3    Severability. The provisions of this Agreement are severable. If any provision or part of this Agreement or the application thereof to any person or circumstance shall be held by a court of competent jurisdiction to be invalid or unconstitutional for any reason, the remainder of this Agreement and the application of such provision or part thereof to other persons or circumstances shall not be affected thereby.

12.4    Entire Agreement. This Agreement, and the Exhibits attached hereto, constitute the entire agreement between the parties hereto relating to the subject matter hereof,

10

and all prior agreements, correspondence, discussions and understandings of the parties (whether oral or written) are merged herein and made a part hereof, it being the intention of the parties hereto that this Agreement shall serve as the complete and exclusive statement of their agreement together.

12.5 <u>No Additional Waiver Implied.</u> The failure of any party to insist, in any one or more instance, upon performance of any of the terms, covenants, or conditions of this Agreement shall not be construed as a waiver or relinquishment of the future performance of any such term, covenant or condition by any other party hereto, but the obligation of such other party with respect to such future performances shall continue in full force and effect.

12.6 <u>Amendment.</u> This Agreement shall be amended only by formal written supplementary amendment. No oral amendment of this Agreement shall be given any effect. All amendments to this Agreement shall be in writing executed by both parties.

12.7 <u>Applicable Law and Venue.</u> This Agreement and all questions arising in connection herewith shall be governed by and construed in accordance with the internal laws of the State of Wisconsin. Venue for any action arising out of or in any way related to this Agreement shall be exclusively in the City of Milwaukee: for matters arising under state law, in Milwaukee County Circuit Court, and in Federal District Court for the Eastern District of Wisconsin for matters arising under federal jurisdiction.

12.8 <u>Independent Contractor.</u> In performing its obligations under this Agreement, the Contractor shall act as an independent contractor solely for its own account and not as an agent, representative, or employee of the City.

12.9 <u>Assignment.</u> This Agreement shall be binding on the heirs, successors, and assigns of each party hereto. The employment by the City of the Contractor to perform the services set forth in this Agreement is a personal contract and the Contractor shall not assign, sublet or transfer the Contractor's interest or obligations under the provisions of this Agreement without the prior written consent of the City. Provided, however, that claims for money due or to become due the Contractor from the City under this Contract may be assigned to a bank, trust company, or other financial institution without such prior written consent. Notices of any such assignment or transfer shall be furnished promptly to the City. Nothing herein shall be construed as creating any personal liability on the part of any officer or agent of the City.

12.10 <u>Counterparts.</u> This Agreement may be executed in one or more counterparts, all of which shall be considered but one and the same agreement, and shall become effective

11

when one or more counterparts have been signed by each of the parties and delivered to the other party.

12.11 Federal Debarment and Suspension. The City reserves the right to cancel this Agreement with any federally debarred contractor or a contractor that presently or during the term of this Agreement is identified on the list of parties excluded from federal procurement and non-procurement contracts.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day, month and year set forth above.

[CONTRACTOR]

By: _____ JEFF PSILLER
                                    4/28/2022

Its: _____ PRESIDENT _____

CITY OF MILWAUKEE

_____          4/28/2022
Jerrel Kruschke, Commissioner of Public Works        Date

Countersigned by:

Richard Bano, Special Deputy  5-9-2022
for Aycha Sawa, City Comptroller CW                 Date

12

**CITY ATTORNEY**

Examined and approved as to content

This _____ day of 5/16/2022 , 2022

DocuSigned by:

*Kathryn E. Block*

F8A4D18DA55243D...

Assistant City Attorney

# Pricing/Cost Proposal

Use this form in order to equitably evaluate costs across all vendors. Describe in as much detail as possible each price component.

Vendor: _____All City Towing LLC_____

## Tow Rate per Zone

1. Tow Rate Per Vehicle Zone 1 (NE) ONLY for the sum of:

   One hundred and four

   _____     $ 104.00_____
   **Words**                                **Figures**

2. Tow Rate Per Vehicle Zone 2 (NW) ONLY for the sum of:

   One hundred and four

   _____     $ 104.00_____
   **Words**                                **Figures**

3. Tow Rate Per Vehicle Zone 3 (SE) ONLY for the sum of:

   One hundred and four

   _____     $ 104.00_____
   **Words**                                **Figures**

4. Tow Rate Per Vehicle Zone 1 (SW) ONLY for the sum of:

   One hundred and four

   _____     $ 104.00_____
   **Words**                                **Figures**

## Supplemental Tow Charges

1. Hourly rate to tow vehicles within the Tow Lot for the sum of:

   One hundred and twenty-five

   _____   $ 125.00 _____
   
   **Words**                                                    **Figures**


2. Tow rate to tow vehicles within the tow lot per vehicle for the sum of:

   Forty

   _____   $ 40.000 _____
   
   **Words**                                                    **Figures**


3. Hourly rate for a stand-by truck for the sum of:

   One hundred and twenty-five

   _____   $ 125.00 _____
   
   **Words**                                                    **Figures**


4. Tow rate to remove vehicles from the streetcar route within ten (10) minutes for the sum of:

   N/A

   _____   $ N/A _____
   
   **Words**                                                    **Figures**


5. Tow rate to remove vehicles from the streetcar route within twenty (20) minutes for the sum of:

   One hundred and forty-five

   _____   $ 145.00 _____
   
   **Words**                                                    **Figures**


6. Tow rate to remove vehicles from the streetcar route within thirty (30) minutes for the sum of:

   One hundred and four

   _____   $ 104.00 _____
   
   **Words**                                                    **Figures**

7. Hourly rate for wait time in excess of thirty (30) minutes when standing by on scene:

One hundred and twenty-five

$ 125.00

| **Words** | **Figures** |

8. If applicable: Daily rate to store a vehicle at the Contractor's lot not to exceed the current state statutes and local ordinances for the sum of:

Twenty-five

$ 25.00

| **Words** | **Figures** |

9. What is your tow lot capacity to store vehicles on behalf of the City of Milwaukee Tow Lot?

Two hundred

200

| **Words** | **Number** |

10. Are you willing to provide heavy vehicle tows?

YES

11. If so, please provide the City of Milwaukee with the components of your rate structure:

Standard tow to include removal of driveshaft when necessary - $895. When towing vehicles that require the removal of a driveshaft the contractor agrees to provide the cost to reconnect the driveshaft ($35 plus parts) on the heavy tow bill upon arrival at the tow lot.

12. What is the cost to re-connect the linkage/drive shaft on a heavy duty tow?

|                                              |                    |
| -------------------------------------------- | ------------------ |
| Thirty-five plus parts                       | $ 35.00            |
| **Words**                                    | **Figures**        |

13. Do you propose any additional towing solutions when it comes to supplemental pricing?

- Rotator - $775/hour
- Plow Truck - $225/Hour
- Skid Steer - $185/hour
- Skilled Man Labor - $100/hour
- Wheel Loader - $305/hour
- Landoll - $350/hour
- Heavy Duty Special Equipment - $47.50/item
- 30 Ton Heavy Duty Winching - $375/hour
- 50 Ton Heavy Duty Winching - $550/hour
- Light Duty Special Equipment - $25/item

# EXHIBIT B

**CONTRACT NO. C661220037**

## AGREEMENT FOR POLICE INITIATED TOWS

### BETWEEN

### THE CITY OF MILWAUKEE

### AND

### ALL CITY TOWING LLC

**THIS AGREEMENT** is made and entered into this ___*1*___ day of ___*May*___, 2022, by and between the City of Milwaukee, a municipal corporation organized under the laws of the State of Wisconsin acting through its ___*DPW*___ (the "City"), and All City Towing, a corporation organized under the laws of the State of Wisconsin (the "Contractor").

**WHEREAS**, the City issued a Request for Proposals (the "RFP") on December 2, 2021, requesting proposals for a police initiated towing contract.

**WHEREAS**, by submitting a proposal, Contractor agrees to supply towing services for illegally parked vehicles.

**WHEREAS**, the Contractor represents itself as being capable, experienced, and qualified to undertake and perform those certain services and other terms as set forth in the RFP and this Agreement as an independent contractor and not as an employee of the City;

**NOW, THEREFORE**, in consideration of the mutual promises contained in this Agreement and other good and valuable consideration, including the right to be scored and remain in the RFP process, the City and the Contractor promise and agree as follows:

## ARTICLE I

### Retention of Services

1.1     The City hereby agrees to engage the Contractor and the Contractor hereby agrees to personally perform, as an independent contractor the services set forth in the Agreement, all in accordance with the terms and conditions herein. The Agreement is

comprised of the following documents, which shall be collectively referred to as the "Agreement":

1. This contract no. C661220036

2. Exhibit I: Fee Schedule

3. Exhibit II: The RFP

4. Exhibit III: The Contractor's Response to the RFP

1.2     For purposes of contract interpretation, in case of any ambiguity, any conflicting terms shall be governed by the document which is listed as the higher priority in the above list of documents, which are listed from highest priority to lowest priority.

## ARTICLE II

## Term of Agreement and Early Termination

2.1     Term of Agreement. The initial term of this Agreement is one (1) year. After the initial term, the Agreement shall renew for one (1) year terms beginning at the termination of the initial or prior term only if the City provides written notice to the Contractor at least ninety (90) days prior to the end of the initial or then-current term. Failure by the City to send notice of a renewal at least ninety (90) days prior to the end of the initial or then-current term shall act as notice of the City's intent to not renew the Agreement for an additional term. This Agreement shall not renew beyond a seventh (7th) renewal unless the parties agree to a renewal in writing.

2.2     Changes. The City may authorize changes to the Agreement. Such changes, including but not limited to any increase or decrease in the contracted scope of services and/or completion date which are mutually agreed to by the City and Contractor shall be incorporated in written amendments to the Agreement. No changes to this Agreement shall be valid unless incorporated as a written, mutually agreed amendment thereto.

2.3     Termination for Cause. If, through any cause, the Contractor shall fail to fulfill in a timely and proper manner its obligations under this Agreement, or if the Contractor shall violate any of the covenants, agreements, or stipulations of this Agreement, the City shall thereupon have the right to terminate this Agreement by giving written notice to the Contractor of such termination and specifying the effective date, at least ten (10) days before the effective date of such termination. In such event, all finished or unfinished documents, data, studies, surveys, drawings, maps, models, photographs, reports or other materials related to the services performed by the Contractor under this Agreement shall, at

2

the option of the City, become the property of the City. Notwithstanding the foregoing, the Contractor shall not be relieved of liability to the City for damages sustained by the City by virtue of any breach of this Agreement by the Contractor and any obligations under Articles VI, X, XI, and XII shall survive termination.

2.4     Termination for Convenience. The City may terminate this Agreement at any time for any reason by giving at least ten (10) days' notice in writing to the Contractor. If the Contractor is terminated by the City as provided herein, the Contractor will be paid for services actually and satisfactorily performed, less payments for such services as were previously made. If this Agreement is terminated due to the fault of the Contractor, Section 2.3 hereof, relative to termination, shall apply. Any obligations under Articles VI, X, XI, and XII shall survive termination.

## ARTICLE III

### Obligations of Contractor

3.1     Scope.     The Contractor is required to perform, do and carryout in a satisfactory, timely, and professional manner the services set forth in the Agreement. The Contractor is required to furnish all services and labor necessary as directed in the Agreement including without limitation, materials, equipment, supplies, and incidentals. Contractor's products and services shall conform to the requirements of the Americans with Disabilities Act.

3.2     Errors or Omissions.     The Contractor shall be responsible and liable for the accuracy of the services performed under this Agreement, and shall promptly make necessary revision or corrections to its services resulting from its acts, errors or omissions.

3.3     Standard of Performance.     Contractor agrees that the performance of the services, pursuant to this Agreement, shall be performed in a manner consistent with the degree of care and skill ordinarily exercised by members of the same profession currently operating under similar circumstances providing like services. Contractor agrees to abide by all applicable federal, state and local laws, regulations, and ordinances, and all provisions of this Agreement, including, but not limited to, the Americans With Disabilities Act.

## ARTICLE IV

### Compensation and Terms of Payment

3

4.1     Terms of Payment. Upon receipt of a properly submitted and approved invoice, Contractor shall be compensated for services and products actually provided at the rates and prices set forth in Exhibit I; however, no payments or disbursements under the Agreement shall be made until satisfactory evidence that compliance with insurance requirements described in Exhibit II has been provided.

4.2     Not to Exceed. All other costs, fees, charges and expenses (including but not limited to travel and administrative costs and fees) not set for in Exhibit I are excluded.

[FEE STRUCTURE – Exhibit I]

4.3     Invoicing and Payments for Fees. Payments to the Contractor for fees pursuant to section 4.2 of this Agreement will submitted to City by Contractor via itemized invoices no more than monthly. Invoices shall be reviewed and approved by the Commissioner of Public Works or his designee.

4.4     Compensation for services required under this Agreement shall be contingent upon each activity and product being reviewed for approval by the City for payment. In the event of a dispute as to the services performed or the compensation to be paid, the good faith decision of the Commissioner of Public Works or his designee shall prevail.

4.5     Prompt Payment Policy. The Contractor shall submit an invoice and other documentation required pursuant to this Agreement (collectively referred to as the "Invoice") to the City on no more frequent than a monthly basis for any fees accrued but not yet invoiced to the City. Pursuant to Common Council File No. 101137, if the City does not make payment within 45 days after receipt of the Invoice, the City shall pay simple interest beginning with the 31st calendar day after submission of the Invoice at the rate of one percent per month. No attorney's fees, expenses, or other collection costs may be billed to the City unless otherwise agreed in writing. No interest shall be applied to any outstanding amounts where the Contractor has been sent notice that the amount owed to the Contractor is subject to a good faith dispute within 45 days of the receipt of the Invoice provided the notice was sent by first-class mail, personally delivered, or otherwise sent in accordance with any notice provisions in this Agreement. In the event that the 45th day after receipt of the Invoice is a Saturday, Sunday or national holiday, such payment may be made on the following business day without interest being owed to the Contractor. The City's failure to pay in a timely fashion does not relieve the Contractor from its obligation to perform the services it has been retained for. Consistent with Wis. Stat. § 66.0135(3), the Contractor shall pay any of its subcontractors for satisfactory work within seven (7) days of the Contractor's receipt of payment from the City or seven (7) days from receipt of an invoice from the subcontractor, whichever is later. If the Contractor fails to make timely payment to a subcontractor, the Contractor shall pay interest at the rate of 12 percent per year,

4

compounded monthly, beginning with the 8th calendar day after the Contractor's receipt of payment from the City or receipt of an invoice from the subcontractor, whichever is later.

4.6    Additional Fringe or Employee Benefits.    The Contractor shall be an independent contractor, and shall not receive nor be eligible for any fringe benefits or any other benefits to which City employees are entitled to or are receiving.

4.7    Taxes, Social Security, Insurance, and Government Reporting.    Personal income tax payments, social security contributions, insurance, and all other governmental reporting and contributions required as a consequence of the Contractor receiving any payment under this Agreement shall be the sole responsibility of the Contractor.

4.8    Withholding of Salaries.    If, in the performance of this Agreement, there is an underpayment of salaries by the Contractor or by any subcontractor thereunder, the City shall withhold from the Contractor out of any payments due to it an amount sufficient to pay employees underpaid the difference between the salaries required hereby to be paid and the salaries actually paid such employees for the total number of hours worked.  The amounts withheld shall be disbursed by the City for and on account of the Contractor or subcontractor, if any, to the respective employees to whom they are due.

4.9    Payment Monitoring Requirements.    Contractor is required to participate in training on the City's contract compliance software.  Contractor must complete the training no later than 30 days after the date of this Agreement.  Throughout the term of this Agreement, Contractor shall regularly provide timely payment information in the City's contract compliance software. City shall not be held liable or be required to pay any interest pursuant to Section 5.5 hereof for any late payments that result in full or in part from Contractor's failure to provide timely payment information to the City. Contractor shall contact the Office of Equity and Inclusion (OEI) at 414-286-5553 if it has questions or concerns regarding the training process.

## ARTICLE V

### Personnel, Qualifications, Subcontracting

5.1    Required Personnel.    The Contractor represents that it has or will secure at its own expense all personnel required to perform the services set forth in the Agreement.  These personnel shall not be employees of or have any contractual relationship to the City.

5.2     <u>Fully Qualified</u>. The Contractor represents that all personnel engaged in the performance of the services set forth in the Agreement shall be fully qualified and shall be authorized or permitted under state and local law to perform the services.

5.3     <u>Subcontracting</u>. None of the services to be performed under the Agreement shall be subcontracted without the prior written approval of the City. If any of the services are subcontracted, the performance of such services shall be specified by written contract and shall be subject to each provision of this Agreement. The Contractor shall be as fully responsible to the City for the acts and omissions of its subcontractors and of persons either directly or indirectly employed by its subcontractor, as it is for acts and omissions of persons directly employed by it.

## ARTICLE VI

### Indemnification and Defense of Suits

The Contractor shall indemnify the City and its officers, agents and employees for all losses, damages, costs, expenses, judgments, accrued interest, liabilities, or decrees arising out of any claim, action in a court, or proceeding before an administrative agency that is brought against the City or any of its subcontractors, officers, agents, or employees for the acts or omissions of the Contractor or any of its subcontractors, officers, agents, or employees in whole or in part in the performance of the covenants, acts, matters or things covered by this Agreement, or for injury or damage caused by the alleged acts or omissions of the Contractor, its officers, agents or employees. The City will, at its sole option, decide whether to tender the defense of any claim, action in court, or proceeding before an administrative agency in which the Contractor has a duty to indemnify to the Contractor or the Contractor's insurer and upon such tender it shall be the duty of the Contractor and the Contractor's insurer to defend such claim, action, or proceeding without cost or expense to the City or its officers, agents, or employees using counsel selected by the Contractor and approved by the City. The Contractor shall not settle any claim, action in any court, or proceeding before an administrative agency relating to the City unless the City consents to the settlement in writing.

## ARTICLE VII

### Insurance

7.1     <u>Contractor's Insurance</u>. The Contractor shall be solely responsible to meet the Contractor's insurance needs as required by the City, and as set forth in the Exhibit II, during the term of this Agreement or any extension thereof. A Certificate of Insurance shall be provided to the City as evidence thereof naming the City as an additional insured as specified in Exhibit II, and providing for a 30 day notice to the City prior to termination or cancellation

6

of the policy. The City reserves the right to require review and approval of the actual policy of insurance before it executes this Agreement.

7.2     Subcontractor's Insurance.  The Contractor is fully liable to the City for the acts of its subcontractors, if any.  Contractor must ensure that its subcontractors, if any, maintain the same minimum insurance limits as those the Contractor is obligated to maintain, as set forth in Exhibit II.

## ARTICLE VIII

### Conflicts of Interest

8.1     The City - Governing Body.  No officer, employee or agent of the City who exercises any functions or responsibilities in connection with the carrying out of any services or requirements to which this Agreement pertains, shall have any personal interest, direct or indirect, in this Agreement.  No member of the Governing Body of the locality and no other public official of such locality who exercises any functions or responsibilities in the review or approval of the carrying out of this Agreement, shall have any personal interest, direct or indirect, in this Agreement.

8.2     Contractor.  The Contractor covenants that it presently has no interest and shall not acquire any interest, direct or indirect, which would conflict in any manner or degree with the performance of its services hereunder.  The Contractor further covenants that in the performance of this Agreement no person having any conflicting interest shall be employed.  An interest on the part of the Contractor or its employee must be disclosed to the City.

## ARTICLE IX

### Non-Discrimination and Equal Employment

9.1     It is the City's policy not to discriminate against any employee or applicant for employment because of sex, race, religion, color, national origin or ancestry, age, disability, lawful source of income, marital status or sexual orientation, gender identity or expression, victimhood of domestic abuse or sexual assault, past or present membership in the military service, HIV status, domestic partnership, genetic identity, homelessness, or familial status, or an individual's affiliation or perceived affiliation with any of these categories ("Protected Classes").  Contractors and subcontractors employing any resident of the City of Milwaukee may not discriminate against any member of the Protected Classes, and such contractors must insert this clause into any subcontracts of subcontractors employing any resident of the City of Milwaukee.

9.2     No person in the United States shall, on the ground of sex, race, religion, color, national origin or religion, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity made possible by or resulting from this Agreement. The Contractor will cause the foregoing provisions to be inserted in all subcontracts, if any, for any work covered by this Agreement so that such provisions will be binding upon each subcontractor, provided that the foregoing provisions shall not apply to contracts or subcontracts for standard commercial supplies or raw materials.

9.3     The Contractor agrees that they will comply with all applicable requirements of the Americans with Disability Act of 1990, 42 U.S.C. 12101, et seq.

## ARTICLE X

## **Addresses and Notices**

Unless otherwise provided in the Agreement, any notice, communication, request, reply or advice (herein severally and collectively, for convenience, called "notice"), herein provided or permitted to be given, made or accepted by one party to the other must be in writing and may be given or be served by depositing the same in the United States mail, postage paid and certified and addressed to the party to be notified, with return receipt requested. Notice deposited in the mail in the manner described above shall be conclusively deemed to be effective, unless otherwise stated in this Agreement, from and after the expiration of three (3) days after it is deposited. Notice given in any other manner should be effective only if and when received by the party to be notified. For the purpose of notice, the address of the parties shall be as follows:

If to the City, to:         Department of Public Works

                            City of Milwaukee

                            Attention: Peter Knox

                            City of Milwaukee- Tow Lot

                            3811 W. Lincoln Ave.

                            Milwaukee, WI   53215


If to the Contractor, to:   All City Towing LLC

                            Attention: Jeff Piller

8

1213 W Mallory Ave

Milwaukee, WI 53221

## ARTICLE XI

### Records, Audits, Confidentiality

11.1    Access to Records.    The Contractor shall maintain books, records, documents and other evidence directly pertinent to performance under this Agreement in accordance with accepted applicable professional practices. The City, or any of its duly authorized representatives, shall have access to such books, records, documents, papers, or any records of the Contractor which are directly pertinent to this Agreement, for the purpose of making audits, examinations, excerpts and transcriptions.

11.2    Establishment and Maintenance of Records / Public Records Law.    Both parties understand that City is bound by the Wisconsin Public Records Law, and as such, all of the terms of this Agreement are subject to and conditioned on the provisions of Wis. Stat. § 19.21, et seq.  Contractor acknowledges that it is obligated to assist City in retaining and producing records that are subject to the Wisconsin Public Records Law (which include, but are not limited to, those records of Contractor generated as a consequence of this Agreement), that the failure to do so shall constitute a material breach of this Agreement, and that Contractor must defend and hold City harmless from liability under that law.  Except as otherwise authorized, those records shall be maintained for a period of 7 years after receipt of final payment under this Agreement.

11.3    City's Right to Audit.    The Vendor shall make all reports, studies, analysis, memoranda, information, records, and related data and materials created as a result of this Agreement available to the City to allow the City to audit, examine, excerpt or transcribe the same and audit, examine, excerpt or transcribe all contracts, invoices, materials, payrolls, records of personnel, conditions of employment, and other data relating to all matters covered by this Agreement any time during normal business hours and as often as the City may, in its sole discretion, deem necessary. If federal or state grants or aids are involved in this Agreement, the Contractor shall make all reports, studies, analysis, memoranda, information, records, and related data and materials created as a result of this Agreement available to the appropriate federal or state agency or the Comptroller General to allow the appropriate federal or state agency or Comptroller General to audit, examine, excerpt or transcribe the same and audit, examine, excerpt or transcribe all contracts, invoices, materials, payrolls, records of personnel, conditions of employment, and other data relating to all matters covered by this Agreement any time during normal business hours and as often as the appropriate federal or state agency or Comptroller General may, in their sole discretion, deem necessary. The Vendor shall not charge any additional fees to the City, appropriate federal or state

9

agency, or Comptroller General by virtue of any additional work or costs associated with the performance of the Vendor's duties under this subsection.

11.4     Third Party Audit. The Vendor shall, on at least an annual basis, hire a third party auditing firm to perform a Statement on Standards for Attestation Engagements (SSAE) No. 18 audit, or equivalent audit, on internal and external Vendor procedures and systems that access or contain confidential data. The Vendor shall adhere to SOC 1 and SSAE 18 audit compliance criteria and data security procedures, or any successor report of a similar nature that is generally accepted in the industry as applicable, applicable to the Vendor. The Vendor shall provide the City with a copy of the audit results set forth its audit reports upon receipt of the same.

## ARTICLE XII

### Additional Provisions

12.1     Data confidential. Except as otherwise provided in this Agreement and subject to the City's obligations under the Wisconsin Public Records Law, the parties agree to keep all of the reports, information, data, etc. prepared, assembled, or shared by and among the parties to this Agreement confidential to the same extent as each party keeps its own data confidential and agrees not to release same except as required by law or court order without prior written consent of the other party.

12.2     Captions. The captions appearing at the beginning of each numbered section of this Agreement are inserted and included solely for convenience, but shall never be considered or given any effect in construing this Agreement or the duties, obligations or liabilities of the respective parties hereto, or in ascertaining intent if any questions of intent should arise.

12.3     Severability. The provisions of this Agreement are severable. If any provision or part of this Agreement or the application thereof to any person or circumstance shall be held by a court of competent jurisdiction to be invalid or unconstitutional for any reason, the remainder of this Agreement and the application of such provision or part thereof to other persons or circumstances shall not be affected thereby.

12.4     Entire Agreement. This Agreement, and the Exhibits attached hereto, constitute the entire agreement between the parties hereto relating to the subject matter hereof,

10

and all prior agreements, correspondence, discussions and understandings of the parties (whether oral or written) are merged herein and made a part hereof, it being the intention of the parties hereto that this Agreement shall serve as the complete and exclusive statement of their agreement together.

12.5    No Additional Waiver Implied.    The failure of any party to insist, in any one or more instance, upon performance of any of the terms, covenants, or conditions of this Agreement shall not be construed as a waiver or relinquishment of the future performance of any such term, covenant or condition by any other party hereto, but the obligation of such other party with respect to such future performances shall continue in full force and effect.

12.6    Amendment.    This Agreement shall be amended only by formal written supplementary amendment.  No oral amendment of this Agreement shall be given any effect. All amendments to this Agreement shall be in writing executed by both parties.

12.7    Applicable Law and Venue.    This Agreement and all questions arising in connection herewith shall be governed by and construed in accordance with the internal laws of the State of Wisconsin.  Venue for any action arising out of or in any way related to this Agreement shall be exclusively in the City of Milwaukee: for matters arising under state law, in Milwaukee County Circuit Court, and in Federal District Court for the Eastern District of Wisconsin for matters arising under federal jurisdiction.

12.8    Independent Contractor.    In performing its obligations under this Agreement, the Contractor shall act as an independent contractor solely for its own account and not as an agent, representative, or employee of the City.

12.9    Assignment.    This Agreement shall be binding on the heirs, successors, and assigns of each party hereto.  The employment by the City of the Contractor to perform the services set forth in this Agreement is a personal contract and the Contractor shall not assign, sublet or transfer the Contractor's interest or obligations under the provisions of this Agreement without the prior written consent of the City. Provided, however, that claims for money due or to become due the Contractor from the City under this Contract may be assigned to a bank, trust company, or other financial institution without such prior written consent. Notices of any such assignment or transfer shall be furnished promptly to the City. Nothing herein shall be construed as creating any personal liability on the part of any officer or agent of the City.

12.10   Counterparts.    This Agreement may be executed in one or more counterparts, all of which shall be considered but one and the same agreement, and shall become effective

11

when one or more counterparts have been signed by each of the parties and delivered to the other party.

   12.11 <u>Federal Debarment and Suspension.</u> The City reserves the right to cancel this Agreement with any federally debarred contractor or a contractor that presently or during the term of this Agreement is identified on the list of parties excluded from federal procurement and non-procurement contracts.

   IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day, month and year set forth above.

**[CONTRACTOR]**

By: _JEFF PILLER_

Its: _PRESIDENT_ 4/28/2022

**CITY OF MILWAUKEE**

Jeffel Kruschke, Commissioner of Public Works    4/29/2022
                                                  Date

**Countersigned by:**

Richard Bove, Special Deputy    5-9-2022
for Aycha Sawa, City Comptroller    Date

**CITY ATTORNEY**

Examined and approved as to content

This _____ day of 5/16/2022 , 2022

DocuSigned by:

*Kathryn E. Block*
FBA4D16DA55243D...

Assistant City Attorney

# Pricing/Cost Proposal

Use this form in order to equitably evaluate costs across all vendors. Describe in as much detail as possible each price component.

Vendor: _____All City Towing LLC_____

## Tow Rate per Zone

1. Tow Rate Per Vehicle Zone 1 (NE) ONLY for the sum of:

   One hundred and four

   _____     $ 104.00_____
   **Words**                                   **Figures**

2. Tow Rate Per Vehicle Zone 2 (NW) ONLY for the sum of:

   One hundred and four

   _____     $ 104.00_____
   **Words**                                   **Figures**

3. Tow Rate Per Vehicle Zone 3 (SE) ONLY for the sum of:

   One hundred and four

   _____     $ 104.00_____
   **Words**                                   **Figures**

4. Tow Rate Per Vehicle Zone 1 (SW) ONLY for the sum of:

   One hundred and four

   _____     $ 104.00_____
   **Words**                                   **Figures**

## Supplemental Tow Charges

1. Hourly rate to tow vehicles within the Tow Lot for the sum of:

   One hundred and twenty-five

   _____    $ 125.00 _____
   **Words**                          **Figures**

2. Tow rate to tow vehicles within the tow lot per vehicle for the sum of:

   Forty

   _____    $ 40.000 _____
   **Words**                          **Figures**

3. Hourly rate for a stand-by truck for the sum of:

   One hundred and twenty-five

   _____    $ 125.00 _____
   **Words**                          **Figures**

4. Tow rate to remove vehicles from the streetcar route within ten (10) minutes for the sum of:

   N/A

   _____    $ N/A _____
   **Words**                          **Figures**

5. Tow rate to remove vehicles from the streetcar route within twenty (20) minutes for the sum of:

   One hundred and forty-five

   _____    $ 145.00 _____
   **Words**                          **Figures**

6. Tow rate to remove vehicles from the streetcar route within thirty (30) minutes for the sum of:

   One hundred and four

   _____    $ 104.00 _____
   **Words**                          **Figures**

7. Hourly rate for wait time in excess of thirty (30) minutes when standing by on scene:

One hundred and twenty-five

_____     $ 125.00
**Words**                          **Figures**

8. If applicable: Daily rate to store a vehicle at the Contractor's lot not to exceed the current state statutes and local ordinances for the sum of:

Twenty-five

_____     $ 25.00
**Words**                          **Figures**

9. What is your tow lot capacity to store vehicles on behalf of the City of Milwaukee Tow Lot?

Two hundred

_____     _____
                                   200
**Words**                          **Number**

10. Are you willing to provide heavy vehicle tows?

_____
YES

11. If so, please provide the City of Milwaukee with the components of your rate structure:

Standard tow to include removal of driveshaft when necessary - $895. When towing vehicles that require the removal of a driveshaft the contractor agrees to provide the cost to reconnect the driveshaft ($35 plus parts) on the heavy tow bill upon arrival at the tow lot.

12. What is the cost to re-connect the linkage/drive shaft on a heavy duty tow?

Thirty-five plus parts

_____    $ 35.00_____
**Words**                                    **Figures**

13. Do you propose any additional towing solutions when it comes to supplemental pricing?

- Rotator - $775/hour
- Plow Truck - $225/Hour
- Skid Steer - $185/hour
- Skilled Man Labor - $100/hour
- Wheel Loader - $305/hour
- Landoll - $350/hour
- Heavy Duty Special Equipment - $47.50/item
- 30 Ton Heavy Duty Winching - $375/hour
- 50 Ton Heavy Duty Winching - $550/hour
- Light Duty Special Equipment - $25/item

# EXHIBIT C

**From:**       Jeff Piller
**To:**          Evan Schmit
**Subject:**    Fw: Contract extension with CPI-U Increase
**Date:**        Wednesday, January 21, 2026 9:31:15 AM

----- Forwarded Message -----
**From:** Vue, Pachia <pvue@milwaukee.gov>
**To:** jeff.allcity <jeff.allcity@yahoo.com>; Knox, Peter <pknox@milwaukee.gov>; Anderson, Nicole <nicande@milwaukee.gov>
**Cc:** Medina, Jacquelyn <jamedin@milwaukee.gov>
**Sent:** Wednesday, January 21, 2026 at 08:32:03 AM CST
**Subject:** Re: Contract extension with CPI-U Increase

Hi Jeff,

Your request for CPI-U increase on the next extensions for contract C661220036 and C661220037 is received. DPW have come to a mutual agreement to this request. However, the CPI-U increase for these contracts is based on the January-January rates. When it gets closer to the renew of these contracts, DPW Contract office will send the extensions with the CPI-U increase rates.

Let me know if you have any questions regarding this. Thank you.


Pachia Vue | Contract Compliance Officer | City of Milwaukee, Department of Public Works
841 North Broadway, Room 506 | Milwaukee, WI 53202 | Direct: (414) 286-3309
*pvue@milwaukee.gov*
www.city.milwaukee.gov/dpwbids

**From:** Jeff Piller <jeff.allcity@yahoo.com>
**Sent:** Monday, January 19, 2026 11:51 AM
**To:** Knox, Peter <pknox@milwaukee.gov>; Anderson, Nicole <nicande@milwaukee.gov>; Vue, Pachia <pvue@milwaukee.gov>
**Subject:** Contract extension with CPI-U Increase

To All-

I am requesting an Extension and Increase for all of my contracts with The City of Milwaukee in connection with the 90-day request deadline soon approaching. I am requesting the Midwest CPI-U for 2025 at 2.7%.

Current Price till April 31st, 2025 - $117.07
Extension Price starting May1st,2026 - $120.23

Thank you in advance -

Jeff Piller, CEO
All City Towing
The City of Milwaukee is subject to Wisconsin Statutes related to public records. Unless otherwise exempted from the public records law, senders and receivers of City of Milwaukee e-mail should presume that e-mail is subject to release upon request, and is subject to state records retention requirements.