**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

In re:

All-City Towing LLC, *et al*[1]    Case No.: 26-20523-rmb

Debtors.    Chapter 11

**MOTION TO ASSUME CONTRACT WITH THE CITY OF SHEBOYGAN FOR TOWING, RECOVERY, AND STORAGE SERVICES**

Bret's Towing, LLC, d/b/a Bret's Towing and Auto Repair (the "Debtor"), hereby moves, pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006, to assume its contract with the City of Sheboygan ("Sheboygan"). In support of this motion, the Debtor states as follows:

**Jurisdiction**

1. The Debtor, along with affiliated entities listed in footnote 1 below, filed their voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 1, 2026 (the "Petition Date"). An order for relief was entered that same day.

2. The Debtor continues to manage its business and affairs pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1344(a) and 157(a), and the order of reference filed in this district entered pursuant to § 157(a).

---

[1] Jointly administered with Bret's Towing LLC, (Case No. 26-20524-rmb), ACT RE LLC, (Case No. 26-20525-rmb), Bret's RE LLC (Case No. 26-20526-rmb), OMS Properties LLC (Case No. 26-20527-rmb), 5408 S 13th LLC (Case No. 26-20528-rmb), 5414 S 13th LLC (26-20529-rmb), Daddy Jeff LLC (Case No. 26-20530-rmb), Mactire Services LLC (Case No. 26-20531-rmb), and Jeffrey Piller and Candice Brecht (Case No. 26-20532-rmb). This document relates only to Bret's Towing, LLC (Case. No. 26-20524-rmb).

4. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). It concerns the administration of the Debtor's estate.

**Background Facts**

5. The Debtor provides towing, recovery, and storage services. Sheboygan, specifically its police department, regularly requires use of towing, recovery, and storage services.

6. On November 1, 2024, the Debtor and Sheboygan entered into the Agreement Between the City of Sheboygan Police Department and Bret's Towing and Auto Repair LLC for Towing, Recovery and Storage Services (the "Contract). A copy of the Contract is attached as Exhibit A.

7. Bret's Towing and Auto Repair is a d/b/a of the Debtor and the name that pops up for the Debtor on Google. Sheboygan prefilled the Contract, naming Bret's Towing and Auto Repair, LLC as a party, and the Debtor signed the Contract without realizing it contained the Debtor's d/b/a name.

8. The Contract is for a two-year term which is set to expire October 31, 2026. There is an option to extend the Contract beyond the two-year term.

9. The Contract provides good, consistent business for the Debtor. The Debtor would like to assume the contract and hopes to extend or renew its terms beyond the current expiration date.

10. Assumption of the Contract will be financially beneficial for the Debtor, and thus beneficial for the Debtor's creditors. If the Contract were to lapse, or if the Debtor is unable to assume the Contract and Sheboygan forgoes extending or renewing its terms, both the Debtor and the Debtor's creditors will be worse off.

## Applicable Law

11. Pursuant to 11 U.S.C § 365(a), "[a] trustee or debtor-in-possession may assume any executory contract 'subject to the court's approval.'" *In re UAL Corp.*, 635 F.3d 312, 319 (7th Cir. 2011), as amended on denial of reh'g (Apr. 13, 2010).

12. "Although the Bankruptcy Code does not provide a standard for analyzing a decision to assume or reject a contract or lease, courts apply a deferential 'business judgment' test." *In re IYS Ventures, LLC*, 659 B.R. 308, 321 (Bankr. N.D. Ill. 2024).

13. A bankruptcy court "reviews the debtor's business judgment with respect to the proposed assumption to determine if it would be beneficial or burdensome to assume the executory contract by evaluating whether assumption would serve the reorganization or whether it would take away funds available to other creditors." *In re UAL Corp.* at 319.

## The Debtor's Business Judgment Supports Assumption of the Contract

14. Assumption of the Contract will be beneficial for the Debtor and, as a result, beneficial for the Debtor's creditors. The Contract provides good business for the Debtor and generates consistent income. Assumption will enable the Debtor to continue generating consistent income under Contract, better position the Debtor to renew or extend the Contract, and ultimately increase the pool of funds available to pay the Debtor's creditors.

## Conclusion

Wherefore, the Debtor requests that the Court enter an Order authorizing the Debtor to assume the Contract with Sheboygan.

Dated: March 6, 2026.

/s/ Tyler M. Jones
Evan P. Schmit
Tyler M. Jones
Kerkman & Dunn

3

Proposed Attorneys for the Debtor

<u>P.O. Address</u>:

839 N. Jefferson St., Suite 400
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: tjones@kerkmandunn.com

# EXHIBIT A

## AGREEMENT
## BETWEEN THE CITY OF SHEBOYGAN POLICE DEPARTMENT AND
## <u>Bret's Towing and Auto Repair LLC</u>
## FOR TOWING, RECOVERY AND STORAGE SERVICES

This Agreement ("Agreement") is made and entered into effective this __1st_____ day of ____**November**_____, __2024_____ (the "Effective Date") by and between the City of Sheboygan Police Department (the "Department") which is a department of the City of Sheboygan (the "City"), and _____**Bret's Towing and Auto Repair LLC**_____ (the "Tow Company").

### WITNESSETH:

WHEREAS, the Department is regularly faced with a need for vehicle towing services to support law enforcement operations; and

WHEREAS, while the Department provides vehicle owners or operators the opportunity to call the tow company of their choice, the Department is regularly asked to contact any tow company for towing services;

WHEREAS, the Department desires to ensure that it has prompt, qualified, and efficient towing services available to address vehicles requiring removal; and

WHEREAS, the Tow Company desires to provide the services set forth in this Agreement; and

WHEREAS, the Tow Company understands that other tow companies may contract with the Department on these or similar terms, and that in the event the Department contracts with multiple tow companies, tow assignments will be made on a rotational basis; and

WHEREAS, the Tow Company recognizes and accepts that any services provided at the Department's request shall be pursuant to the terms and conditions of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants contained in this Agreement, it is mutually agreed as follows:

**1. <u>Term of Agreement</u>**. This Agreement shall last from the Effective Date until October 31, 2026, unless terminated or extended pursuant to this Agreement.

**2. <u>Scope of Services</u>**. The Tow Company shall promptly furnish all facilities, labor, equipment, and materials required to perform the following Towing, Recovery, and Storage Services (the "Services") in accordance with all applicable laws and the terms of this Agreement as may be requested by during the Term of this Agreement:

    a. **<u>Law Enforcement Evidentiary Tow</u>**. The Tow Company shall tow vehicles for evidentiary purposes at the Department's request. Especially great care in the preservation of these vehicles during transportation and handling is required. These vehicles shall be

taken to the Police Evidence / Impound facility or to the vehicular evidence collection and processing bay. Both of these locations are within City limits. The Department shall be responsible for the costs of a Law Enforcement Evidentiary Tow.

b. **Department-Owned Vehicle**. The Tow Company shall tow Department-owned vehicles at the Department's request. These vehicles shall be taken to the Police Department or such other location identified by the Department. The Department shall be responsible for the costs of a Department-Owned Vehicle Tow.

c. **Towing Privately-Owned Vehicles at the Vehicle Owner's or Operator's Request**. When requested by the Department on behalf of the vehicle owner or operator, the Tow Company shall tow a privately-owned vehicle to the owner or operator's chosen destination.

d. **Towing and Storage of Abandoned and/or Partially Dismantled Vehicles**. When requested by the Department, the Tow Company shall tow an abandoned or partially dismantled vehicle from private or public property to the Tow Company's secured impound area.

e. **Snow Emergency**. During a Snow Emergency declared by the City of Sheboygan and when requested by the Department, the Tow Company shall tow vehicles designated by the Department to the Tow Company's secured impound area.

f. **Storage**. As needed, Tow Company shall provide storage of abandoned and incapacitated vehicles that it tows under this Agreement.

g. **Heavy Vehicles**. No request to tow a vehicle displaying a "Class D" plate or heavier will be handled by this Agreement.

Upon making a request for service under this Agreement, the Department shall, to the extent possible, provide the Tow Company with a full and accurate description of the location of the request for service; and as accurate as possible, a description of the vehicle or vehicles involved and the services required.

In the event that other tow companies enter into similar agreements with the Department, the Tow Company understands that tow assignments related to the Services will be made on a rotational basis.

When providing Services, the Tow Company shall use whatever methods or equipment minimize or eliminate inflicting ancillary damage to any vehicle in the course of Tow Company's duties.

3. **Fees and Billing**. Except with respect to Law Enforcement Evidentiary Tows or Department-Owned Vehicle Tows, payment for the Services shall be the vehicle owner's responsibility. The Tow Company shall be responsible for billing and collection of all Services rendered pursuant to this Agreement. The Department shall not assist in collections, shall not be responsible for any charges, and will not reimburse Tow Company for any charges deemed

uncollectable. The Tow Company shall be responsible for complying with any and all laws and regulations applicable to their operations.

The Tow Company agrees that the Department will not be held liable for any costs associated with the provision of tow services to privately owned vehicles or the storage of vehicles that have been towed, regardless of whether the tow services and resulting storage are actually requested by the vehicle owner or operator or the Department.

Any fee not set forth in this Section shall not be imposed on Services administered pursuant to this Agreement. Mileage shall not be charged for tows within the City, or within two miles of the City limits. Mileage may be charged for transportation to locations more than two miles outside of City limits at a rate of $4.00 per mile.

**Maximum Fees.** The Tow Company shall charge no more than the following for towing within the City and up to two miles outside City limits:

| | |
|---|---|
| Tow of Police Department Owned Vehicle | $85.00 |
| Snow Emergency Tow between 8:00 a.m. and 5:00 p.m. | $110.00 |
| Snow Emergency Tow between 5:00 p.m. and 8:00 a.m. | $135.00 |
| Abandoned Vehicle Tow | $135.00 |
| Law Enforcement Evidentiary Tow | $135.00 |
| Private Party Vehicle Tow between 8:00 a.m. and 5:00 p.m. | $135.00 |
| Private Party Vehicle Tow between 5:01 p.m. and 7:59 a.m. | $160.00 |
| Vehicle Storage per day | $60.00 |

The following additional services may not exceed more than $30 per service:

1. Use of skates due to any vehicle wheels not rolling (no keys or damaged steering or suspension)
2. Use of snatch blocks or center block due to needing to change the vehicle angle in order to load
3. Disposal of oil dry or miscellaneous vehicle parts

Each ¼ hour of labor for:

1. Wait time of more than 15 minutes at the scene before the Tow Company can begin to load the vehicle.
2. Clean up at scene.
3. Clean up of the tow truck at Tow Company's location due to fluid spill on the tow truck.
4. Additional staff or truck needed to complete Services.

**Fee Disputes.** In addition to any other right or remedy in law or equity, a recipient of service pursuant to this Agreement may request an informal hearing before the Chief of Police or the Chief's designee if they believe they have been charged more than that set forth in this Section. If the Chief of Police or the Chief's designee determines that the fee charged exceeds the fee

set forth in this Section, the Tow Company shall correct the bill or refund any money previously collected within ten (10) days of the determination.

If the Tow Company disagrees with the Chief's or the Chief's designee's determination, the Tow Company may appear before the City's Licensing, Hearing, and Public Safety Committee (the "Committee") to present the Tow Company's position in the matter. The Tow Company shall provide notice of its request to appear before the Committee no later than seven (7) days after receiving the Chief's or the Chief's designee's determination. The Committee's decision shall be final. The Tow Company shall correct the bill or refund any money previously collected within ten (10) days of the Committee's determination.

If the Tow Company does not timely correct the bill or refund the money collected, the Chief of Police may temporarily remove the Tow Company from the list of service providers included in the rotational schedule or may terminate the Agreement.

**4. Availability.** The Tow Company shall be available 24 hours per day, 365 days per year as service demands, and shall provide sufficient on-call personnel and equipment for the handling of such service requests. Absent circumstances beyond the Tow Company's control, the Tow Company is expected to respond to any call within twenty minutes of the request for service. In order to meet this availability, Tow Company represents that it will maintain a sufficient number of tow vehicles in good condition in an appropriate location so as to perform the Services in a reasonable and workmanlike manner in accordance with the time constraints expressed by this Agreement, and that the tow vehicles shall have the necessary equipment to, among other things, remove all glass and other debris from accident scenes.

If the Tow Company declines a call for service, or fails to timely arrive at service location, the Chief of Police may, in his/her discretion, in addition to all other rights and remedies available, temporarily remove the Tow Company from the list of service providers included in the rotational schedule or may terminate the Agreement. In such case, neither the City nor the Department shall have any liability to the Tow Company.

**5. Responsibility.** The Tow Company shall be responsible for any vehicle it tows, including the contents of the vehicle, from the time it is towed until the vehicle is delivered to: (1) the City Impound Area, (2) a location specified by the vehicle owner, or (3) if the vehicle is stored at the Tow Company's storage facility, the entire time the vehicle remains in the possession of the Tow Company until it is lawfully released pursuant to Section 6 of this Agreement.

**6. Release of Vehicles.** The Tow Company shall not release a vehicle into the custody of the registered owner or his or her designee without proof that, to the extent required by the Sheboygan Municipal Code §§ 52-47 and 52-267, all fines and penalties assessed by the City have been paid, any other steps have been satisfied, and all costs incurred for towing and storage have been paid.

The Tow Company and the Department expect that the cost of towing and storage charges will exceed the value of the vehicle towed in at least some situations. Upon a determination by the Chief of Police or the Chief's designee that the situation satisfies Wis. Stat. § 342.40(2) and Sheboygan Municipal Code § 52-266(b), the vehicle may be junked by the Tow Company, with the proceeds applied to the cost of towing and storage.

The Tow Company and the Department also recognize that following all measures to assure that the lawful owner of a vehicle is given an opportunity to claim the vehicle, there may be situations in which an owner does not recover their vehicle pursuant to the timelines set forth in state law and local ordinance, despite the fact that it seems the cost of towing and storage charges will not exceed the value of the vehicle towed. In such circumstances, if an adequate bid is not received pursuant to Sheboygan Municipal Code § 52-267(d), the vehicle may be junked by the Tow Company pursuant to Sheboygan Municipal Code § 52-267.

If the Tow Company junks a vehicle towed or stored pursuant to this Agreement, the Department will assist in filing the proper documentation with the State of Wisconsin for the lawful transfer of vehicle title to the Tow Company in order to effectuate the junking of the vehicle.

7. **Miscellaneous Provisions.**
    a. **Assignment and Delegation**. Tow Company shall not assign any rights or delegate any duties under this Agreement without the Department's prior written consent.

    b. **Authority**. Each person executing this Agreement on behalf of a party hereto represents and warrants to the other party that the execution and delivery of this Agreement has been duly authorized; that the person(s) executing this Agreement have the full power, authority, and right to do so; and that such execution is sufficient and legally binding on such party to enable this Agreement to be enforceable in accordance with its terms.

    c. **Compliance with Laws**. Tow Company shall be fully responsible for complying with all federal, state, and local laws, including those related to the storage of vehicles subject to the payment of fees, and the release or disposal of vehicles in the case of abandonment.

    d. **Conflict of Interest.** Tow Company declares that it has no present interest, nor shall it acquire any interest, direct or indirect, which would conflict with the performance of Services under this Agreement. Tow Company agrees that no person having any such interest shall be employed in the performance of this Agreement.

    e. **Force Majeure.** Neither party shall be in default by reason of any failure in performance of this Agreement in accordance with reasonable control and without fault or negligence on their part. Such causes may include, but are not restricted to, acts of nature or the public enemy, acts of the government in its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather. In every case, the failure to perform must be beyond the reasonable control and without the fault or negligence of the party.

    f. **Foreign Corporation**. A foreign corporation (any corporation other than a Wisconsin corporation) which becomes a party to this Agreement is required to conform to all the requirements of Wis. Stat. Ch. 180 relating to a foreign corporation, and must possess a certificate of authority from the Wisconsin Department of Financial Institutions, unless the corporation is transacting business in interstate commerce or is otherwise exempt from the requirement of obtaining a certificate of authority.

g. **Governing Law and Venue**. This Agreement shall be governed by the laws of the State of Wisconsin. Venue of any disputes arising under this Agreement shall be in the Sheboygan County Circuit Court, Sheboygan County, Wisconsin.

h. **Identity of Contractor**. Tow Company acknowledges that one of the reasons that the Department has entered into this Agreement is the Tow Company's qualifications and experience. Tow Company thus agrees that the Services to be performed pursuant to this Agreement shall be performed by Tow Company. Tow Company shall not subcontract any part of the Services without the Department's prior written permission. The Chief of Police shall be authorized to provide this written permission. The Department reserves the right to reject any of Tow Company's personnel or proposed outside sub-contractors. Tow Company is fully responsible to the Department for the acts or omissions of any approved sub-contractor.

i. **Indemnification**. To the extent permitted by law:
   i. Tow Company shall indemnify and defend the City of Sheboygan—including its Officials, Agents, and Employees—from all liability, including, but not limited to, losses, damages, costs, attorney's fees, expenses, causes of action, claims, or judgments resulting from the claimed injury, death, damage to property, or loss of use of property or any person or legal entity arising out of or in any way connected with the performance of work or work to be performed under this Agreement.

   ii. Tow Company shall reimburse the City for any costs, expenses, judgments, and attorney's fees paid or incurred, by or on behalf of the City, its Officials, Agents, or Employees, or paid for on behalf of the City, its Officials, Agents, or Employees by insurance purchased or self-insurance provided by the City arising out of or in any way connected with the performance of work or work to be performed under this Agreement.

   iii. Tow Company shall further indemnify and defend the City, its Officials, Agents, and Employees from liability or claims for any injuries to or death of Tow Company's employees (or the employees of any authorized subcontractor) arising out of or in any way connected with the work or work to be performed under this Agreement, including protection against any claim of the contractor or subcontractor for any payments under any worker's compensation law or any expenses of or any payments made by any worker's compensation insurance carrier on behalf of said contractor or sub-contractor and the Tow Company shall indemnify the City for any costs, expenses, judgments, and attorney's fees with respect to any above referenced workers' compensation claims incurred or paid by the City or paid on behalf of its Officials, Agents, or Employees by insurance purchased or self-insurance provided by the City of Sheboygan.

   iv. This Indemnification Provision is intended in the broadest possible way permitted by law to ensure that the City and its Officials, Agents, and Employees shall incur no liability as a result of its tangential involvement with the Services performed by the Tow Company under this Agreement.

j.  **Independent Contractor**. During the entire term of this Agreement, the Tow Company shall be an independent contractor, and in no event shall any of its personnel, agents, or sub-contractors be construed to be, or represent themselves to be, employees of the City or the Department. Tow Company shall be solely responsible for the payment and reporting of all employee and employer taxes, including social security, unemployment, and any other federal, state, or local taxes required to be withheld from employees or payable on behalf of its employees.

k.  **Insurance**.
    i.  Tow Company shall acquire and maintain, for the duration of the Agreement, Workers' Compensation Insurance that meets all statutory requirements.

    ii. Tow Company shall acquire and maintain, for the duration of the Agreement, Commercial General Liability Insurance with a policy limit of at least $1,000,000 per occurrence and $2,000,000 in the aggregate.

    iii. Tow Company shall acquire and maintain, for the duration of the Agreement, Comprehensive Automobile Liability and Property Damage Insurance that covers the operation of owned, hired, and non-owned motor vehicles with a policy limit of at least $1,000,000 per person and $1,000,000 per occurrence.

    iv. All insurance must be primary and non-contributory to any insurance or self-insurance carried by the City.

    v.  Prior to performing Services pursuant to this Agreement, the Tow Company shall provide a Certificate of Insurance to the Department, listing the City as an additional insured, as proof of the above-specified insurance coverage. The Certificate of Insurance must come from a company licensed to do business in the State of Wisconsin. The Certificate of Insurance shall provide that no cancellation of insurance shall occur without notification, in writing, to the Department at least 30 days prior to any such cancellation.

    vi. Approval of the insurance by the Department shall not relieve or decrease the extent to which Tow Company may be held responsible for payment of damages resulting from Tow Company's provision of the Services under this Agreement.

l.  **Integration and Modification**. This Agreement, including any Exhibits incorporated by reference, represents the entire and integrated agreement between the Department and Tow Company. It supersedes all prior and contemporaneous communications, representations and agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified only by a written amendment signed by both parties to the Agreement.

m.  **Intent to be Bound**. The Department and Tow Company each binds itself and its successors, executors, administrators, permitted assigns, legal representatives and, in the case of a partnership, its partners to the other party to this Agreement, and to the successors, executors, administrators, permitted assigns, legal representatives and partners of such other party in respect to all provisions of this Agreement.

n. **Invoices to the Department.** Invoices and monthly statements for fees that are explicitly the responsibility of the Department pursuant to this Agreement shall be submitted to the Sheboygan Police Department, 1315 N. 23rd Street, Sheboygan, WI 53081. Invoices shall be put to the attention of Sergeant of Administration.

o. **Loss or Damage to Tow Company's Materials.** Under no circumstances shall the City be liable for any loss or damage to Tow Company's equipment or materials from any cause whatsoever.

p. **Maintenance of Facility.** Tow Company is solely responsible for the proper maintenance of its facility, including, but not limited to, security and environmental protection.

q. **Non-Discrimination.** In connection with the performance of work under this Agreement, Tow Company agrees not to discriminate against any employee or applicant for employment because of age, race, religion, color, handicap, sex, physical condition, developmental disability (as defined in Wis. Stat. 51.01(5)), sexual orientation (as defined in Wis. Stat. 111.32(13m)), or national origin. This provision shall include, but not be limited to, employment, upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship. Tow Company further agrees to take affirmative action to ensure equal employment opportunities.

r. **Notice.** Any notice required by this Agreement shall be made in writing to the individuals/addresses specified below:

| Department: | Tow Company: |
| --- | --- |
| City Clerk | Bret's Towing and Auto Repair |
| City of Sheboygan | |
| 828 Center Ave. | 2233 S Business Drive |
| Sheboygan, Wisconsin 53081 | Sheboygan, WI, 53081 |

Nothing contained in this sub-section shall be construed to restrict the transmission of routine communications between representatives of the Department and Tow Company.

s. **Open Records.** Both parties understand that the City is bound by the Wisconsin Public Records Law and, as such, this contract is subject to that law. Tow Company acknowledges that it is obligated to assist the City in retaining and producing records that are subject to Wisconsin Public Records Law, and that the failure to do so shall constitute a material breach of this Agreement, and that Tow Company must defend and hold the City harmless from liability under that law. Except as otherwise authorized, those records shall be maintained for a period of seven (7) years after the Term of this Agreement ends.

t. **Police Control of Scene.** Tow Company agrees that in all cases, the officer in charge of the accident or disablement shall be in complete charge of all personnel responding to

such occurrence, and that Tow Company's personnel are required to follow the direction of the officer in charge.

u. **Safety Requirements.** Tow Company shall be responsible for the safety of its employees and independent contractors at all times and shall provide all equipment necessary to ensure their safety. Tow Company shall ensure the enforcement of all applicable safety rules, regulations, ordinances and laws.

v. **Severability.** The invalidity, illegality, or unenforceability of any provision of this Agreement or the occurrence of any event rendering any portion or provision of this Agreement void shall in no way affect the validity or enforceability of any other portion or provision of this Agreement. Any void provision shall be deemed severed from this Agreement, and the balance of the Agreement shall be construed and enforced as if it did not contain the particular provisions to be held void. The parties further agree to amend this Agreement to replace any stricken provision with a valid provision that comes as close as possible to the intent of the stricken provision. The provisions of this sub-section shall not prevent the entire Agreement from being void should a provision which is of the essence of this Agreement be determined void.

w. **Standard of Care.** Tow Company shall be responsible for completing the Services in a manner consistent with the degree of care and skill ordinarily exercised by members of the same profession currently practicing under similar circumstances.

x. **Termination.**
   i. The Department reserves the right to terminate this Agreement without advanced written notice if the Tow Company fails to provide and uphold the Services set forth in this Agreement. The Chief of Police shall have the authority to terminate this Agreement. Factors that the Chief may consider include, without limitation, Tow Company's: (1) timely response and performance; (2) professional service and attitude; (3) ability to perform the necessary Services in a safe manner; (4) customer satisfaction; (5) collateral damage to vehicles and property; and (6) accurate record keeping.

   ii. The Department shall also have the right to terminate this Agreement without advanced written notice upon Tow Company's voluntary admission of insolvency or other financial inability to continue providing Services under the Agreement.

   iii. Either Party to this Agreement shall have the right to terminate this Agreement upon providing ninety (90) days written notice to the other Party.

y. **Third Party Rights.** Nothing in this Agreement shall be construed to give any rights or benefits to anyone other than the City and Tow Company.

z. **Tow Records.** Tow Company shall keep records, which shall be available for inspection during normal business hours by the Department. Records to be maintained shall include the following:

i. Time, date, and location of tows requested under this Agreement.
    ii. Make, model, and registered owner of vehicles towed under this Agreement.
    iii. Itemized billing of charges imposed as a result of the tow.
    iv. Signed release by the person claiming the vehicle.
    v. Any complaints made by the vehicle owner, regarding charges, additional vehicle damage, lost or stolen items, or any other issue.
    vi. The disposition of the vehicle.

aa. **Waiver**. No failure of either party to enforce a term of this Agreement against the other shall be construed as a waiver of that term, nor shall it in any way affect the party's right to enforce that term. No waiver by any party of any term of this Agreement shall be considered to be a waiver of any other term or breach thereof.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed the day and year first written above.

**CITY OF SHEBOYGAN**
**POLICE DEPARTMENT**

BY: _____
    Christopher Domagalski
    Chief of Police

DATE: _____

**TOW COMPANY**

BY: _*[signature]*_____
    Jeff Piller, CEO

DATE: ____October 30th, 2024_____